**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Andrew Joseph SCHAACK, Defendant-Appellant.**

**No. 71–1142.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 14, 1972.

Decided May 31, 1972.

Certiorari Denied Oct. 10, 1972. See 93 S.Ct. 121.

---

George C. Pontikes, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William M. Skretny, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before HASTINGS, Senior Circuit Judge, KILEY, Circuit Judge, and GORDON, District Judge.[1]

KILEY, Circuit Judge.

Defendant Schaack appeals from his conviction of refusal to submit to induction.[2] We affirm.

The only issue raised by Schaack is the constitutionality of that part of 50 U.S.C.App. § 456(a) (1) which provides that "any person who subsequent to June 24, 1948 serves on active duty for a period of not less than eighteen months in the armed services of a nation with which the United States is associated in mutual defense activities . . . may be exempted from training and service, but not from registration."

During 1964–65 Schaack, a native of Luxembourg, served nine months in the Army of Luxembourg and completed his military service there. In October, 1965, he emigrated to the United States and thereafter registered with the Illinois Selective Service System. He was subsequently ordered to report for induction on March 28, 1968. Schaack reported as ordered, but refused to submit, and his indictment, trial and conviction followed.

After close of the evidence at the trial, Schaack's attorney moved for an acquittal on the ground of denial of due process because of alleged discrimination and arbitrariness in the eighteen month requirement of § 456(a) (1) [3] and because that requirement was not reasonably related to any legitimate congressional purpose.

The district court denied the motion, finding that the congressional purpose in the eighteen month limitation was "undoubtedly the maintenance of our defense capabilities" by strengthening the military force of our allies without subjecting their military veterans emigrating to this country to undue "double obligation of service;" and that some "minimum length of service was necessary." The court found no invidious discrimination in Congress' setting the limitation at eighteen instead of nine months.

Schaack argues that the "eighteen months" provision is an arbitrary classification and in violation of his Fifth Amendment due process right. He argues here that the eighteen month requirement is not supported by "any demonstrable" legitimate congressional objective. He states that neither Congress in enacting § 456(a) (1) nor the President in promulgating the implementary regulation 32 C.F.R. § 1622.-40(a) (4) has made a fair distinction between the eighteen month limitation

---

1. District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

2. 50 U.S.C.App. § 462(a).

3. 50 U.S.C.App. § 456(a) (1) provides in pertinent part:

   Any person who subsequent to June 24, 1948, serves on active duty for a period of not less than eighteen months in the armed forces of a nation with which the United States is associated in mutual defense activities as defined by the President, may be exempted from training and service, but not from registration, in accordance with regulations prescribed by the President,

   except that no such exemption shall be granted to any person who is a national of a country which does not grant reciprocal privileges to citizens of the United States: *Provided*, That any active duty performed prior to June 24, 1948, by a person in the armed forces of a country allied with the United States during World War II and with which the United States is associated in such mutual defense activities, shall be credited in the computation of such eighteen month period. The statute was amended in 1971 and the eighteen month period was reduced to a twelve month period. P.L. 92–129, § 101(a) (11), September 28, 1971.

and his nine month Luxembourg Army service and that the distinction is invidiously discriminatory. No case deciding the precise question before us has been cited or found, but we find no merit in Schaack's argument.

■ We hold that the classification has a rational basis and is not invidiously discriminatory. We agree with the district court finding of the congressional goals. The congressional intentions were to implement our own defenses by strengthening the defenses of our allies, to maintain friendship with our allies, and to further prudent diplomacy in our foreign affairs. We think that these goals are of high legislative priority and are clear from the enactment, and terms, of the statute. How to achieve the appropriate balance in serving these vital national interests clearly called for legislative expertise.

■ "The power of Congress to classify and conscript manpower for military service is 'beyond question.'" United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). This power extends to establishment of a "system of registration for individuals liable for training and service" and to requiring cooperation of individuals within the registration system. And the promulgation of regulations by the President [4] with respect to registration and eligibility classification is "a legitimate and substantial" aid in making the system work. *Id.*

It is true that discrimination "may be so unjustifiable" as to violate the Fifth

Amendment due process right. Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The Ninth Circuit, however, in Smith v. United States, 424 F.2d 267, 269 (9th Cir.1970), relied, *inter alia,* upon Bolling v. Sharpe, *supra,* in rejecting a contention that the Selective Service Act violated the Fifth Amendment due process clause in exempting "men under 18½ and over age 26" from the draft. The court stated that the Fifth Amendment "merely requires" that all legislative classifications have a reasonable basis.

32 C.F.R. § 1622.40 has a wide range of Class IV-A categories, with varying periods of prior service requirements which qualify registrants for exemption from future service.[5]

The exemption provision of § 456(a) (1) before us is limited as follows: "except that no such exemption shall be granted to any person who is a national of a country which does not grant reciprocal privileges to citizens of the United States." The reciprocal qualification is specified in this way: ". . . a nation with which the United States is associated in mutual defense activities and which grants exemption from training and service in its armed forces to citizens of the United States who have served . . . in the armed forces of the United States . . . for a period of not less than eighteen months." 32 C.F.R. § 1622.40(a) (4).

It is not disputed that until 1955, when the pertinent provision of §

---

4. 50 U.S.C.App. § 460(b) (1).

5. A reading of 32 C.F.R. reveals that a registrant may be placed in Class IV–A under the following circumstances:
    1. If he is discharged for the convenience of the service after serving a period of not less than six months in a branch of the armed forces.
    2. If he has served honorably on active duty for a period of not less than one year in one branch of the armed forces.
    3. If he served twenty-four months of active duty in the Public Health Service.

4. If he served in certain types of reserves, having completed eight years of satisfactory service after a training of not less than three months.
5. If he served in certain National Guard units and completed eight years, training for not less than three consecutive months.
6. If he completed eight years of active service in certain types of reserves with training of not less than four consecutive months.
7. If he completed six years of satisfactory service as a member of any reserve and has ceased to be a member of that reserve.

456(a) was enacted,[6] there was no exception or credit given for any person who had already served in the armed forces of a foreign ally. In 1955 only Great Britain and Turkey, of our fifty-nine associates in mutual defense, required, as we do, twenty-four months of military service. The range of service then required in most of the other fifty-seven associate nations was from fourteen to eighteen months.

We think that, for the reasons, given, it was clearly within the political function of Congress to require that a person serve eighteen months in the armed forces of a foreign ally in order to qualify for the exemption under § 456(a) (1). We cannot say that the congressional classification did not have a rational basis.

We hold therefore that neither the relevant provisions in § 456(a) (1) nor those in 32 C.F.R. § 1622.40(a) (4) violate due process.

Affirmed.

6. 1955 Amendments to the Universal Military Training and Service Act, 84th Cong. P.L.–118 § 101(a), June 30, 1955. 69 Stat. 223.